UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

**NICHOLAS LEE SUZOR**,

    Plaintiff,

v.                                                                         6:23-cv-305-NPM

**COMMISSIONER OF SOCIAL SECURITY**,

    Defendant.

---

## ORDER

Plaintiff Nicholas Lee Suzor seeks judicial review of a denial of Social Security disability benefits. The Commissioner of the Social Security Administration filed the transcript of the proceedings (Doc. 16),[1] Suzor filed an opening brief (Doc. 21), the Commissioner responded (Doc. 24), and Suzor replied (Doc. 25). For the reasons discussed below, the decision of the Commissioner is affirmed.

**I.    Eligibility for Disability Benefits and the Administration's Decision**

    **A.    Eligibility**

The Social Security Act and related regulations define disability as the inability to do any substantial gainful activity by reason of one or more medically

---

[1] Cited as "Tr." followed by the appropriate page number.

determinable physical or mental impairments that can be expected to result in death or that have lasted or can be expected to last for a continuous period of not less than twelve months.[2] Depending on its nature and severity, an impairment limits exertional abilities like walking or lifting, nonexertional abilities like seeing or hearing, tolerances for workplace conditions like noise or fumes, or aptitudes necessary to do most jobs such as using judgment or dealing with people.[3] And when functional limitations preclude both a return to past work and doing any other work sufficiently available in the national economy (or an impairment meets or equals the severity criteria for a disabling impairment as defined in the regulatory "Listing of Impairments"), the person is disabled for purposes of the Act.[4]

B.  **Factual and procedural history**

On December 18, 2019, Suzor applied for disability insurance benefits. (Tr. 289). He asserted an alleged onset date of November 6, 2019, alleging disability due to the following: bipolar disorder, schizoaffective disorder, PTSD, depression, and mood instability. (Tr. 82-83, 92-93, 318). As of the alleged onset date, Suzor was 40

---

[2] *See* 42 U.S.C. §§ 416(i), 423(d), 1382c(a)(3); 20 C.F.R. § 404.1505.

[3] *See* 20 C.F.R. § 404.1513(a)(2)(i)-(iv) (discussing the various categories of work-related abilities), 404.1522(b) (providing examples of abilities and aptitudes necessary to do most jobs), 404.1545(b)-(d) (discussing physical, mental, and other abilities that may be affected by an impairment), 404.1594(b)(4) (defining functional capacity to do basic work activities).

[4] *See* 20 C.F.R. § 404.1511.

years old with EMT training and three years of college. (Tr. 82, 92, 319). He previously worked as an agent in a corporate office, a cashier, and a plumber's helper. (Tr. 88, 320).

On behalf of the administration, a state agency[5] denied the application initially on May 15, 2020, and upon reconsideration on November 23, 2020. (Tr. 82-91, 92-105). At Suzor's request, Administrative Law Judge (ALJ) Valencia Jarvis held a hearing and, on October 17, 2022, issued an unfavorable decision finding Suzor was not disabled. (Tr. 17-30, 36-81). Suzor's timely request for review by the Administrative Appeals Council was denied. (Tr. 1-3). Suzor then brought the matter to this court, and the case is ripe for judicial review.

### C. The ALJ's decision

The ALJ must perform a five-step sequential evaluation to determine if a claimant is disabled. 20 C.F.R. § 404.1520(a)(1). This five-step process determines:

> (1) whether the claimant is engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment or combination of impairments; (3) if so, whether these impairments meet or equal an impairment listed in the Listing of Impairments; (4) if not, whether the claimant has the residual functional capacity ("RFC") to perform his past relevant work; and (5) if not, whether, in light of his age, education, and work experience, the claimant can perform other work that exists in significant numbers in the national economy.

---

[5] In Florida, a federally funded state agency develops evidence and makes the initial determination whether a claimant is disabled. *See* 42 U.S.C. § 421(a); 20 C.F.R. § 404.1503(a).

*Atha v. Comm'r, Soc. Sec. Admin.*, 616 F. App'x 931, 933 (11th Cir. 2015) (internal quotation omitted); *see also* 20 C.F.R. § 404.1520(a)(4).

The governing regulations provide that the Social Security Administration conducts this "administrative review process in an informal, non-adversarial manner." 20 C.F.R. § 404.900(b). Unlike judicial proceedings, Social Security Administration hearings "are inquisitorial rather than adversarial." *Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353, 1364 (11th Cir. 2018) (quoting *Sims v. Apfel*, 530 U.S. 103, 111 (2000) (plurality opinion)). "Because Social Security hearings basically are inquisitorial in nature, '[i]t is the ALJ's duty to investigate the facts and develop the arguments both for and against granting benefits.'" *Id.* Indeed, "at the hearing stage, the commissioner does not have a representative that appears 'before the ALJ to oppose the claim for benefits.'" *Id.* (quoting *Crawford & Co. v. Apfel*, 235 F.3d 1298, 1304 (11th Cir. 2000)). "Thus, 'the ALJ has a basic duty to develop a full and fair record. This is an onerous task, as the ALJ must scrupulously and conscientiously probe into, inquire of, and explore for all relevant facts.'" *Id.* (quoting *Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1267 (11th Cir. 2015)).

Nonetheless, while the claimant is relieved of the burden of production during step five as to whether there are enough jobs someone like the claimant can perform, the claimant otherwise has the burdens of production and persuasion throughout the process. *See* 20 C.F.R. § 404.1512 (providing that the claimant must prove

disability); *see also Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005) (noting the regulations "place a very heavy burden on the claimant to demonstrate both a qualifying disability and an inability to perform past relevant work"). In short, the "overall burden of demonstrating the existence of a disability as defined by the Social Security Act unquestionably rests with the claimant." *Washington*, 906 F.3d at 1359 (quoting *Doughty v. Apfel*, 245 F.3d 1274, 1280 (11th Cir. 2001)).

At step one of the evaluation, the ALJ found Suzor had not engaged in substantial gainful activity since November 6, 2019, the alleged onset date. (Tr. 19). At step two, the ALJ characterized Suzor's severe impairments as: PTSD; major depressive disorder, recurrent, severe with psychotic features; schizoaffective disorder, depressed type; and alcohol abuse disorder. (Tr. 19). At step three, the ALJ determined Suzor did not have an impairment or combination of impairments that met or medically equaled the severity of an agency-listed impairment. (Tr. 20).

As a predicate to step four, the ALJ arrived at the following RFC:

> [T]he claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: The claimant is able to understand, remember, and carry out simple and routine tasks. The claimant can tolerate office level noise, frequently. The claimant can have occasional interaction with coworkers and the public. The claimant can have occasional exposure to fumes, odors, dusts, gases, and poor ventilation.

(Tr. 21). Consequently, the ALJ found Suzor was unable to perform his past relevant work. (Tr. 28). At step five, the ALJ found Suzor could perform other work that

exists in significant numbers in the national economy. (Tr. 28-29). In support, a vocational expert testified (Tr. 29) that an individual of Suzor's age, education, work experience, and RFC can perform the following representative occupations:

- *Tumbler operator,* DOT #309.685-034, medium; SVP 2, with 23,000 jobs in the national economy;
- *Laundry Checker,* DOT #369.687-014, medium, SVP 2, with 25,000 jobs in the national economy;
- *Laundry Laborer*, DOT #361.687-018, medium, SVP 2, with 24,000 jobs in the economy.[6]

Thus, for purposes of the Act, the ALJ concluded Suzor was not disabled from November 6, 2019, the alleged onset date, through October 17, 2022, the date of the decision. (Tr. 29).

## II. Analysis

The issue on appeal is whether the ALJ failed to properly evaluate the medical opinions of Dr. Mira Sachdev.

### A.     Standard of review

The court "may not decide the facts anew, make credibility determinations, or

---

[6] The DOT numbers refer to the *Dictionary of Occupational Titles* and its detailed explanations concerning each occupation's requirements. These descriptions include exertion and skill levels. Exertion refers to the work—in a purely physical sense—that the job requires, and it is divided into five categories: sedentary, light, medium, heavy, and very heavy. Skill refers to the time it takes—during or before a job, such as prior experience or education—to develop necessary abilities, and it is divided into three categories: unskilled, semiskilled, and skilled. The "SVP" (Specific Vocational Preparation) provides further subdivision of the three skill categories into nine levels: SVP 1 and 2 are unskilled; SVP 3 and 4 are semiskilled; and SVP 5 through 9 are skilled.

reweigh the evidence." *Buckwalter v. Acting Comm'r of Soc. Sec.*, 997 F.3d 1127, 1132 (11th Cir. 2021). While the court must account for evidence both favorable and unfavorable to a disability finding and view the evidence as a whole, *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995), the court's review of the administration's decision is limited to determining whether "it is supported by substantial evidence and based on proper legal standards." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Goode v. Comm'r of Soc. Sec.*, 966 F.3d 1277, 1280 (11th Cir. 2020) (quoting *Crawford*, 363 F.3d at 1158)).

"[T]he threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). The inquiry is "case-by-case," and "defers to the presiding ALJ, who has seen the hearing up close." *Id*. at 1157. In other words, a "presumption of validity attaches" to the ALJ's factual findings. *Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987). And if supported by substantial evidence, the ALJ's findings of fact are conclusive. 42 U.S.C. § 405(g). This means the district court will affirm, even if the court would have reached a contrary result as finder of fact, and even if the court finds that the evidence "preponderates against" the agency's decision. *Noble v. Comm'r of Soc. Sec.*, 963 F.3d 1317, 1323 (11th Cir. 2020) (quoting *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991)).

### B. The ALJ properly considered the opinions of Dr. Mira Sachdev.

On January 19, 2021, Dr. Sachdev completed a Mental Capacity Assessment. The assessment is a three-page, check-the-box form in which Dr. Sachdev opined that Suzor has extreme mental limitations in several areas of mental functioning, including those related to concentration, persistence or maintaining pace; adapting or managing oneself; and interacting with others. She also opined that Suzor has moderate to extreme limitations in his ability to understand, remember, or apply information. And she noted that Suzor "does better with social isolation." (Tr. 1104-06). The ALJ found Dr. Sachdev's opinions unpersuasive because, among other reasons, the extreme limitations were inconsistent with Suzor's activities of daily living. (Tr. 27). Suzor disagrees with the ALJ's assessment.

For claims filed on or after March 27, 2017—such as this one—an ALJ must use the same set of factors to assess all medical opinions. *See* 20 C.F.R. § 404.1520c. No longer is an ALJ to afford deferential weight to the opinions of any particular source, such as a treating physician. *Id.* As to each medical source, the ALJ must consider: (1) supportability; (2) consistency; (3) relationship with the claimant, including the length, frequency, and purpose of the examining and any treatment relationship; (4) specialization; and (5) other factors, such as the source's familiarity with other evidence concerning the claim, that tend to support or contradict the medical opinion. 20 C.F.R. § 404.1520c(c). Supportability and consistency are the

two most important factors. 20 C.F.R. § 404.1520c(b)(2). Supportability refers to "the objective medical evidence and supporting explanations presented by a medical source . . . to support his or her" opinion. 20 C.F.R. § 404.1520c(c)(1). Consistency looks to whether "the evidence from other medical sources and nonmedical sources" are consistent with the medical opinion presented. 20 C.F.R. § 404.1520c(c)(2). Thus, persuasiveness, rather than weight, is the object at hand when assessing a medical opinion. 20 C.F.R. §§ 404.1520c, 404.1527(c).

As noted, the ALJ found Dr. Sachdev's opined limitations inconsistent with Suzor's activities of daily living. Suzor does not deny his participation in such activities but, instead, argues the ALJ failed "to note significant qualifiers placed on many of them, thereby creating a false narrative that Plaintiff had far less limiting mental limitations." (Doc. 21 at 13). Suzor only identifies three such instances.

First, the ALJ explained that Dr. Sachdev's opined limitation in interacting with others was not supported given Suzor "volunteered several days a week at a senior center." Second, the ALJ was unpersuaded by Dr. Sachdev's limitation in maintaining concentration and attention given Suzor was "able to play games on his phone for hours a day, and also watch television." And finally, the ALJ noted Suzor was able to behave appropriately toward others (contrary to Dr. Sachdev's limitation) given he reported going to casinos and, thus, did not fully isolate himself and was able to interact with strangers. (Tr. 27). Objecting to the ALJ's analysis,

Suzor points to his testimony retreating from these statements during his ALJ hearing. There, he reported that he reduced his volunteer work in 2021 to typically once per month for up to two hours at a time (Tr. 67-69); he has difficulty concentrating when it comes to playing on his phone and watching television (Tr. 52-53); and he would only visit casinos once per month for an average of four hours. (Tr. 62-63).

Suzor's argument is unconvincing. As an initial matter, he attempts to taint the ALJ's entire analysis—which discusses an array of daily activities—simply because she purportedly failed to adopt his efforts to qualify three activities. This will not do. Moreover, the "qualifiers" placed on two such activities have nothing to do with Suzor's mental limitations. For instance, Suzor testified that he volunteers at Space Coast Honor Flight once per month because it only hosts one event each month. Specifically, he stated "I was volunteering more often but they reduced their amount of events." (Tr. 69). In fact, he noted that there was a "double event" coming up, and he would be volunteering at both events. (Tr. 67-68). And although Suzor and his father used to volunteer together at a Veterans Museum, he stopped doing so because his father stopped. (Tr. 70). As for the average of only four hours per month at the casino, Suzor explained that the amount of time he spends gambling depends on his level of success. If he keeps winning, he keeps gambling. (Tr. 62). So the purported qualifiers on these activities have nothing to do with Suzor's mental

limitations and everything to do with the decisions of others to reduce the volunteer work and his success at the card table.

On that same score, the cited "qualifiers" do not undermine the ALJ's citation to these activities. Regardless of how frequently Suzor visited the casino or participated in volunteer work, the fact that he consistently does so at all demonstrates his ability to interact with others, which contradicts Dr. Sachdev's extreme limitation in this area of functioning. The same is true of Suzor's reported television and phone-game usage, which suggests he likely has less than an extreme limitation in his ability to concentrate. *Cf. Brown v. Saul*, No. cv 119-144, 2020 WL 5507817, *7 (S.D. Ga. Aug. 12, 2020), *report and recommendation adopted*, 2020 WL 5507532 (Sept. 11, 2020) (rejecting plaintiff's argument that the ALJ failed to properly consider qualifying information about her activities of daily living because "[t]hese details do not undermine" the ALJ's reason for citing these activities).

Suzor also argues that it is unclear how the cited activities translate to an ability to perform full-time work. (Doc. 21 at 13). But the court disagrees. The ALJ explained which extreme limitations she believed were called into question by each daily activity. It makes no difference whether, for instance, visiting a casino or playing video games generally translates to an ability to perform full-time work. What mattes is that these activities were inconsistent with Dr. Sachdev's extreme limitations and provided substantial evidence for discounting her opinions. *See May*

*v. Comm'r Soc. Sec. Admin.*, 226 F. App'x 955, 959 (11th Cir. 2007) (concluding participation in daily activities for short durations does not disqualify claimant from disability, but "that does not mean it is improper for the ALJ to consider a claimant's daily activities at all").[7]

And apart from the activities of daily living, the ALJ also explained that she found Dr. Sachdev's extreme limitations unpersuasive because they were inconsistent with an assessment completed during the same time frame by Dr. Joseph Walden. (Tr. 27). Only thirteen days *before* Dr. Sachdev completed her Mental Capacity Assessment, Dr. Walden completed the exact same assessment form[8] and found mild, moderate, or no limitations in the same areas of functioning where Dr. Sachdev found extreme limitations. (Tr. 665-67). The ALJ also observed that Dr. Sachdev failed to account for Suzor's PTSD triggers. (Tr. 27).

Suzor otherwise cites evidence in the record that may tend to corroborate Dr. Sachdev's opinions. But under a substantial evidence standard, this will not suffice. A claimant "must do more than point to evidence in the record that supports [his] position; [he] must show the absence of substantial evidence supporting the ALJ's conclusion." *See Sims v. Comm'r of Soc. Sec.*, 706 F. App'x 595, 604 (11th

---

[7] Unpublished opinions of the Eleventh Circuit are cited as persuasive authority. *See* 11th Cir. R. 36–2.

[8] Notably, Suzor obtained these assessments after the state agency had twice denied his application.

Cir. 2017); *see also Adefemi v. Ashcroft*, 386 F.3d 1022, 1027 (11th Cir. 2004) ("[T]he mere fact that the record may support a contrary conclusion is not enough to justify a reversal of the administrative findings."). Ultimately, the ALJ explained that Dr. Sachdev's extreme limitations were unsupported and inconsistent with the record. This is all that is required. *See Cook v. Comm'r of Soc. Sec.*, No. 6:20-cv-1197-RBD-DCI, 2021 WL 1565832, *3 (M.D. Fla. Apr. 6, 2021) ("the ALJ's analysis is directed to whether the medical source's opinion is supported by the source's own records and consistent with the other evidence of record[.]"). And the court must decline Suzor's invitation to reweigh the evidence.

### III. Conclusion

Upon consideration of the submissions of the parties and the administrative record, substantial evidence supports the ALJ's decision and there was either no error or no harmful error in the ALJ's application of the correct legal standard. Accordingly, the decision of the Commissioner is **AFFIRMED** pursuant to sentence four of 42 U.S.C. § 405(g), and the clerk is directed to enter judgment, terminate any pending motions and deadlines, and close the case.

**ORDERED** on March 25, 2024.

NICHOLAS P. MIZELL
United States Magistrate Judge